EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|---|---|
| | 2023 TSPR 74 |
| Aprobación de enmiendas al Reglamento del Tribunal Supremo | 212 DPR ___ |

Número del Caso:  ER-2023-0001

Fecha:  14 de junio de 2023

Materia: Aprobación de enmiendas al Reglamento del Tribunal Supremo

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Aprobación de enmiendas al
Reglamento del Tribunal
Supremo

ER-2023-0001

RESOLUCIÓN

En San Juan, Puerto Rico, a 14 de junio de 2023.

El 22 de noviembre de 2011 aprobamos el Reglamento de este Tribunal, 4 LPRA Ap. XXI-B. Según lo aconseja la experiencia adquirida, hoy adoptamos las enmiendas necesarias para robustecer nuestro trabajo judicial. Estos cambios, producto de múltiples reuniones y discusiones colegiadas, buscan lograr un Tribunal más eficiente y ágil de cara a los retos del futuro.

Guiados por la necesidad de hacer más efectiva nuestra tarea revisora de impartir justicia afinamos las disposiciones que regulan el tracto de las decisiones en sus méritos. A la par, modificamos la redacción de ciertas reglas en aras de proveer un marco más claro del orden de eventos desde que se presenta un recurso hasta que se certifica una decisión en los méritos.

En esta ocasión aclaramos lo concerniente a los sellos de rentas internas que se requieren para solicitar admisión por cortesía en casos consolidados. Por otro lado, decidimos reconocer el importante rol que juega la Secretaría de este Tribunal en el buen funcionamiento de nuestros procesos. Sabemos que es imperativo que nuestros foros judiciales estén

abiertos a la comunidad legal y la ciudadanía en general.

En igual tono de accesibilidad y transparencia, se destaca la modernización de las disposiciones referentes a las comparecencias de *amicus curiae* y vistas orales. Esto tiene el propósito de fomentar decisiones más informadas, lo que contribuye a hacer justicia.

En fin, los cambios van dirigidos, en su mayoría, a mejorar nuestros trámites internos y a facilitar aún más la gestión de los abogados y las abogadas, y la comunidad en general. Así, con el beneficio de la experiencia, se enmiendan las Reglas 4, 5, 9, 12, 14, 25, 39, 41, 43 y 52 de nuestro Reglamento para que dispongan de la manera siguiente:

**Regla 4. Funcionamiento del Tribunal**

(a) Funcionamiento en Pleno

El Tribunal en Pleno atenderá la decisión de todos los asuntos civiles y criminales, e intervendrá en los asuntos relacionados con la disciplina y rehabilitación de Jueces, Juezas, abogados, abogadas, notarios y notarias.

Las decisiones del Tribunal en Pleno se adoptarán por mayoría de los Jueces y las Juezas que intervengan, pero ninguna ley se declarará inconstitucional a no ser por una mayoría del número total de los Jueces y las Juezas que componen el Tribunal.

Para la expedición de un auto por el Pleno, se requerirán los votos de la mayoría de los Jueces y las Juezas que intervengan. Cuando la votación sea empate, se hará constar que el Tribunal está igualmente dividido y se denegará la expedición del auto discrecional sin tramite ulterior.

La expedición y denegatoria de todos los asuntos discrecionales y de aquellos otros asuntos que el Tribunal determine, serán considerados directamente por el Tribunal en Pleno.

(b) Funcionamiento en salas

El Tribunal podrá organizarse en una o más salas para el despacho de cualquier asunto, excepto aquellos para los cuales la Constitución dispone un número mínimo de Jueces y Juezas. La sala o las salas de despacho no podrán tener menos de tres (3) Jueces o Juezas. Presidirá cada sala el Juez o la Jueza de mayor antigüedad en el Tribunal que forme parte de ésta. Cuando el Juez Presidente o la Jueza

Presidenta forme parte de una sala, él o ella la presidirá. El Tribunal designará, mediante resolución, a los Jueces o las Juezas que integrarán las salas de despacho.

El Tribunal designará a los Jueces o las Juezas que han de integrar las salas de despacho, pero a ningún Juez o ninguna Jueza se le podrá excluir de esa función contra su deseo. En caso de que sea necesario, para evitar dicha exclusión, se rotarán los y las miembros de la sala o de las salas de despacho.

Los Jueces o las Juezas integrantes de una sala deberán intervenir en el despacho y la decisión de los asuntos sometidos ante ésta. Las resoluciones de sala se identificarán como originadas en la sala que las emite, haciéndose constar los Jueces o las Juezas que la componen. Para recomendar[1] la expedición de un auto se requerirán los votos de por lo menos la mitad de los Jueces o las Juezas que intervengan. Cuando una sala determine que un auto debe ser expedido, lo referirá al Pleno del Tribunal. El Pleno del Tribunal determinará finalmente si expide el auto en los recursos que le hayan sido referidos.

El Juez Presidente o la Jueza Presidenta deberá formar parte de cualquier sala de despacho para resolver un empate. Cuando por alguna circunstancia el Juez Presidente o la Jueza Presidenta no pueda intervenir para resolver un empate, designará a otro Juez u otra Jueza que no forme parte de la sala en que surgió el empate, en orden sucesivo de antigüedad, para actuar en su lugar.

Cuando un miembro de la sala no pueda intervenir en la decisión de algún asunto, el Juez Presidente o la Jueza Presidenta designará a otro Juez u otra Jueza para constituir la sala. Esta designación se hará por orden invertido de antigüedad, comenzando con el Juez o la Jueza de menor antigüedad que no forme parte de la sala del Juez sustituido o la Jueza sustituida, hasta el Juez o la Jueza de mayor antigüedad que no forme parte de la sala, y así consecutivamente.[2] Si la persona sustituida fuese quien

---

[1] La palabra "recomendar" connota que las salas de despacho solamente tendrán la facultad de recomendar la expedición de un auto y no de expedirlo. Esa recomendación será remitida al Pleno del Tribunal, quien determinará finalmente si expide el recurso. A través de este mecanismo siempre será el Tribunal en Pleno quien pase juicio sobre la expedición de los autos. De esa forma se evita la exclusión de los y las miembros de otras salas de despacho que no hayan tenido la oportunidad de estudiar el recurso que se recomiende expedir, fomentando que las decisiones sean colegiadas.

[2] Este texto añadido busca impartir objetividad a la designación de los Jueces sustitutos y Juezas sustitutas cuando uno de los Jueces o una de las Juezas de una sala no intervenga en un asunto. El criterio de antigüedad garantiza que no se nombre a un Juez o una Jueza con mayor frecuencia que a otros u otras.

preside dicha sala, el Juez o la Jueza de mayor antigüedad entre quienes forman parte de la sala así constituida actuará como presidente o presidenta para la consideración del asunto.

Cuando se presente una moción de reconsideración de una decisión emitida por una sala, ésta será resuelta por una sala distinta a la que haya emitido la decisión, excepto cuando la composición de la sala haya sido alterada. En ese caso, la moción podrá ser considerada por cualquier sala o por el Tribunal en Pleno. Si se presenta una moción de reconsideración subsiguiente, ésta será resuelta por una sala distinta a la que haya emitido la decisión y a la que haya resuelto la primera moción de reconsideración. Las mociones de reconsideración de una decisión emitida por el Pleno del Tribunal serán resueltas por éste.[3]

La lista de los asuntos atendidos por las salas de despacho y por el Pleno del Tribunal se divulgarán luego de que las partes sean notificadas.[4]

(c) Termino de las sesiones

El término de las sesiones del Tribunal se extenderá desde el primer día hábil de octubre de cada año hasta el último día laborable del mes de junio siguiente, a menos que el Tribunal disponga otra cosa.

Durante el receso, por acuerdo del Pleno, el Tribunal podrá funcionar a través de una o más salas. En tal caso, el Tribunal determinará el número de salas y el de los Jueces o las Juezas que las integrarán, que no podrán ser menos de tres (3). El Juez Presidente o la Jueza Presidenta podrá ordenar que se creen salas especiales durante el receso cuando las salas de turno no puedan atender algún recurso o asunto. Las recomendaciones de las salas durante el receso se circularán por escrito al Tribunal en Pleno al comienzo del término de las sesiones.

De no establecerse salas para el receso, el Juez Presidente o la Jueza Presidenta, o en su defecto, el

---

[3] La enmienda introducida en este párrafo busca que las tres salas de despacho puedan tener la oportunidad de pasar juicio sobre los méritos de un recurso antes de que se deniegue definitivamente. Esto permite la participación de todo el Tribunal al momento de decidir si recomienda la expedición del auto. Con ello se promueve que la decisión sobre la expedición de un recurso sea colegiada.

[4] Esta disposición tiene por objetivo hacer público el calendario de los asuntos que fueron atendidos en la reunión del Pleno y de las salas de despacho. De esta forma, el público en general, además de las partes, tendrá acceso a esa información. En fin, se trata de una medida que busca mantener al Pueblo informado sobre los asuntos que el Tribunal considera.

Tribunal, designará a uno o una de sus miembros para actuar como Juez o Jueza de turno. Este o esta ejercerá en nombre del Tribunal todos aquellos poderes que correspondan a los Jueces o las Juezas de turno, según la ley y este reglamento.

Durante el periodo de receso, el presidente o la presidenta de la sala, si la hubiese, tendrá las funciones que esta regla asigna al Juez Presidente o a la Jueza Presidenta, a menos que el presidente o la presidenta de la sala o el Juez Presidente Interino o la Jueza Presidenta Interina esté en funciones de su cargo.

(d) Inhibición

(1) Cualquier Juez o Jueza de este Tribunal que fuese objeto de una comunicación oral o escrita hecha fuera de los canales judiciales ordinarios, mediante la cual se trate de transmitir información o de influir en su ánimo respecto a cualquier asunto ante este Tribunal, lo informará al Pleno del Tribunal y decidirá si se inhibe o no. Lo anterior es sin perjuicio de las demás causales de inhibición que establecen la ley, los Cánones de Ética Judicial y las mejores costumbres y tradiciones judiciales, sin perjuicio también de las sanciones que pueda imponer el Tribunal a cualquier abogado o abogada que promueva o permita tales comunicaciones.

(2) En el caso de que se presente una recusación o petición de inhibición a uno de los Jueces o las Juezas del Tribunal, el Secretario o la Secretaria enviará la moción de recusación o petición de inhibición al Juez o a la Jueza objeto de la misma, quien decidirá sobre el particular, sin la intervención del Pleno.

Al entender en una recusación, los Jueces o las Juezas del Tribunal podrán tomar en consideración las causales de inhibición que establecen la ley, los Cánones de Ética Judicial y las tradiciones judiciales.

Cualquier Juez o Jueza podrá inhibirse a iniciativa propia sin tener que expresar los motivos para tal inhibición.

**Regla 5. Decisiones en los méritos**

(a) Los casos para decisión en los méritos se asignarán a los Jueces o las Juezas por el Juez Presidente o la Jueza Presidenta cuando éste o ésta haya votado con la mayoría en la conferencia del Pleno del Tribunal, mediante memorando o de cualquier otro modo. Cuando el Juez

Presidente o la Jueza Presidenta no haya votado con la mayoría, el caso lo asignará el Juez Asociado o la Jueza Asociada de mayor antigüedad que haya votado con la mayoría. En ambas circunstancias, la asignación se hará dentro de los cinco (5) días siguientes a la fecha cuando los casos queden sometidos.

Cuando se celebre una vista oral para un caso, luego de que ésta concluya, el Pleno del Tribunal se reunirá en conferencia el mismo día, salvo que el Tribunal disponga otra cosa, para discutir el caso en los méritos. En esa conferencia, la discusión del caso la iniciará el Juez o la Jueza que haya informado el caso en la conferencia del Pleno del Tribunal. Posteriormente cada Juez o Jueza, por orden invertido de antigüedad (desde menor antigüedad hasta mayor antigüedad), discutirá el caso. Concluida esta discusión, cada Juez o Jueza deberá indicar cuál es su proposición para resolver el caso. Al finalizar la conferencia, si el Juez o la Jueza que inició la discusión comparte el criterio de la mayoría, el caso se asignará a éste o ésta. Si el Juez o la Jueza que inició la discusión no comparte el criterio de la mayoría, el Juez Presidente o la Jueza Presidenta asignará el caso a uno de los Jueces o a una de las Juezas de la mayoría, siempre que el Juez Presidente o la Jueza Presidenta comparta el criterio mayoritario. Cuando el Juez Presidente o la Jueza Presidenta no esté de acuerdo con la proposición de la mayoría, el caso lo asignará el Juez Asociado o la Jueza Asociada de mayor antigüedad que esté de acuerdo con la mayoría.[5]

Al asignar los casos, el Juez Presidente o la Jueza Presidenta, o el Juez Asociado o la Jueza Asociada correspondiente, deberán tomar en consideración los criterios siguientes: (1) la distribución justa entre los Jueces y las Juezas del Tribunal; (2) la probabilidad de que el Juez o la Jueza al que se le asigne el caso pueda expresar la visión de la mayoría, y (3) el esfuerzo que

---

[5] Esta disposición es una fusión de las normas internas del Tribunal Supremo de Idaho, Pennsylvania y del Tribunal Supremo de Estados Unidos. Véanse, Regla 12 de las Reglas Internas del Tribunal Supremo de Idaho, en http://www.isc.idaho.gov/rules/internal108.pdf (última visita, 10 de mayo de 2011); Acápite III (B) del Procedimiento de Operación Interna del Tribunal Supremo de Pennsylvania, en http://www.courts.state.pa.us/NR/rdonlyres/ACFB1911-CD65-4E51B6A6702FA9198CDF/0/SUPREMECOURT_IOP.pdf (última visita, 10 de mayo de 2011). Su objetivo es que los casos en los que se celebre una vista oral sean discutidos en los méritos con premura antes de que sean asignados. Estos casos se asignarán a uno de los Jueces o una de las Juezas que comparta el criterio mayoritario. Así, a través de esta disposición el Tribunal se asegura de que los casos para solución en los méritos se asignen a los Jueces o las Juezas que compartan el criterio mayoritario.

haya realizado el Juez o la Jueza al trabajar el caso u otros asuntos relacionados con éste.[6]

La preparación y atención de las ponencias para los casos que sean asignados en los méritos es un asunto prioritario para el Tribunal. Por eso, como regla general, el Juez o la Jueza a quien se le haya asignado un caso en los méritos deberá circular su ponencia a todos los Jueces y las Juezas del Tribunal dentro del término de trescientos sesenta y cinco (365) días desde que le fuera asignado. Sin embargo, cuando el caso se haya asignado en los méritos, luego de la celebración de una vista oral, como regla general se deberá circular la ponencia dentro del término de doscientos setenta (270) días desde que se haya asignado. En todos los casos, se preparará un memorando de asignación, en el que se indique el día cuando vence el término para circular la ponencia. Si un Juez o una Jueza tarda más del tiempo señalado, según el término que aplique, en circular la ponencia del caso que se le haya asignado en los méritos, deberá suscribir un memorando, dentro de los diez (10) días siguientes a la fecha límite, en el que exponga las razones del atraso. Este memorando se le dirigirá al Juez Presidente o a la Jueza Presidenta con copia a los Jueces Asociados y las Juezas Asociadas.

Lo establecido en el párrafo anterior aplicará únicamente a los casos que sean asignados a los Jueces o a las Juezas luego de la aprobación de ese párrafo. Por excepción, los términos establecidos en el párrafo anterior no aplicarán a los recursos que sean reasignados a cualquier Juez o Jueza de nuevo nombramiento.[7]

(b) Después de que el Juez o la Jueza que tenga un caso asignado en los méritos circule la ponencia original, los Jueces y las Juezas que intervengan en la decisión de un caso deberán indicar su posición dentro de veinte (20) días de circulada una ponencia como sentencia o dentro de treinta (30) días de circulada una ponencia como opinión.

---

[6] Esta disposición proviene de las Prácticas y Procedimientos de Operación Interna del Tribunal Supremo de California. Básicamente, establece unas guías que regirán de forma más objetiva la asignación de los casos. Véase, Acápite VIII(B)(4), en http://www.lectlaw.com/files/crs05.htm (última visita, 10 de mayo de 2011).

[7] Este párrafo reconoce una excepción importante a la obligación de que los Jueces y las Juezas circulen las ponencias que les hayan sido asignadas dentro del periodo descrito en el párrafo anterior. Aquí se reconoce que sería demasiado oneroso para los Jueces y las Juezas de nuevo nombramiento cumplir con estos términos en los casos que hereden de otros Jueces u otras Juezas cuando comiencen a ejercer sus cargos en el Tribunal. Por eso, para estos, el término aplicará a los casos que se le asignen luego de celebrada la primera conferencia del Pleno del Tribunal; es decir, luego de que estos pasen juicio sobre la expedición de los casos.

Cualquier Juez o Jueza que desee examinar con mayor detenimiento la ponencia circulada deberá notificarlo a los demás Jueces y Juezas dentro del término indicado y contará con un término adicional de quince (15) días, el cual será escalonado entre los Jueces y Juezas que componen el Tribunal, para realizar el referido examen. El Tribunal podrá ampliar este término por causa justificada. Una vez dicho Juez o dicha Jueza exprese por escrito su criterio, los demás Jueces y Juezas deberán expresar su posición al respecto dentro de los cinco (5) días de circulada la referida expresión escrita cuando la ponencia original se circule como sentencia, o dentro de diez (10) días cuando la ponencia original se haya circulado como opinión.

En la situación de que un Juez o una Jueza no se manifieste o no formule su ponencia dentro de los términos a los que se refieren los párrafos anteriores, se podrá certificar la decisión, haciéndose constar su no intervención o su expresión, si la hizo. No se podrá certificar ponencia alguna que no haya sido previamente circulada a todos los Jueces y todas las Juezas por lo menos diez (10) días antes de ser certificada, a no ser que una mayoría así lo disponga o que por la naturaleza urgente del asunto se prescinda de dichos términos, aunque no de la circulación.

En el caso de que una ponencia se circule como sentencia y, antes de que venza el término de veinte (20) días dispuesto para que los Jueces y las Juezas indiquen y/o circulen por escrito su posición, el Juez o la Jueza ponente la modifica a una opinión, al término de veinte (20) días se le añadirán diez (10) días adicionales. En el caso de que ocurra lo contrario, es decir, que una ponencia se circule como opinión y, antes de que venza el término de treinta (30) días el Juez o la Jueza ponente la modifica a una sentencia, al término de treinta (30) días se le reducirán diez (10) días, si todavía no han transcurrido más de veinte (20) días de circulada la ponencia. Cuando hayan transcurrido más de veinte (20) días, el cambio de la ponencia de opinión a sentencia no alterará el término original de treinta (30) días. En todo caso, el Juez o la Jueza ponente deberá emitir un memorando en el que notifique la modificación de la ponencia, el nuevo término con el que contarán los demás Jueces y Juezas para indicar su posición y la nueva fecha de vencimiento de ese término.[8]

---

[8] Esta enmienda reconoce la facultad de los Jueces y las Juezas para convertir la ponencia circulada de opinión a sentencia y viceversa. Además, establece que cuando ello se haga antes de que venza el término reglamentario, la modificación adoptará los términos de la ponencia correspondiente. Es decir, si se circula la ponencia como opinión y el Juez o la Jueza ponente desea convertirla en una sentencia, podrá hacerlo antes de que haya vencido el término original, siempre que lo

Cuando se circule una ponencia y esta reciba la conformidad de todos los Jueces y todas las Juezas, el Juez o la Jueza ponente la certificará como la decisión del Tribunal. Vencidos los términos, cuando la ponencia circulada obtenga la conformidad de una mayoría de los demás Jueces y Juezas, el Juez o la Jueza ponente deberá remitir un *Memorando de intención*, en el que informará que en el término de al menos tres (3) días laborables circulará el *Memorando de 24 horas* que se menciona en este párrafo. De enmendarse o circularse alguna ponencia dentro de ese término de tres (3) días, los demás Jueces o Juezas tendrán cuarenta y ocho (48) horas laborables para expresar su posición al respecto. Una vez transcurra el mencionado término sin que alguien enmiende su ponencia o circule una ponencia, la ponencia mayoritaria estará lista para certificarse. Por lo menos veinticuatro (24) horas antes de certificar la ponencia mayoritaria como decisión del Tribunal, el Juez o la Jueza ponente deberá notificar que así lo hará (*Memorando de 24 horas*), informando a su vez la fecha de circulación de la ponencia, los nombres de aquellos Jueces o aquellas Juezas que se hayan inhibido, que no hayan intervenido, que hayan concurrido o que hayan disentido. No se podrán circular cambios a la ponencia mayoritaria, ni circular o enmendar otras ponencias junto con el *Memorando de 24 horas*.[9]

Todas las ponencias sobre un caso o asunto se certificarán simultáneamente, excepto en las circunstancias indicadas en el párrafo siguiente. Al certificarse una ponencia, el Juez o la Jueza ponente lo informará por escrito a los demás Jueces y Juezas. Luego de que una ponencia sea certificada, no podrá ser enmendada o modificada en forma alguna, a no ser que una mayoría del Tribunal así lo permita. De permitirse, el Juez autor o la Jueza autora de la ponencia modificada deberá notificar a los demás Jueces y Juezas los cambios incorporados a ésta. Si ocurre algún cambio en la votación original, así se hará constar en la certificación.

Los Jueces y las Juezas solo podrán reservarse el derecho a emitir una ponencia luego de que se haya

---

notifique mediante un memorando en el que se haga constar el nuevo término y la nueva fecha de vencimiento del término. Si en este caso la opinión lleva más de veinte (20) días de circulada, no será necesario acortar diez (10) días porque ya se habrá excedido del término dispuesto para los casos de sentencia, permaneciendo inalterado el término de la ponencia. Por el contrario, si la ponencia se circula como sentencia y se convierte en una opinión, se le añadirán diez (10) días al término original de veinte (20) días para que los Jueces y las Juezas indiquen su criterio.

[9] Esta enmienda tiene el propósito de darle finalidad al proceso de circulación de ponencias y cambios a la ponencia mayoritaria y demás ponencias, previniendo que se circulen cambios a estas a tan solo minutos u horas de certificarse.

certificado una decisión del Tribunal cuando, por la naturaleza del asunto implicado, la mayoría del Tribunal haya decidido acortar los términos aquí establecidos. En estas circunstancias, el Juez o la Jueza que se haya reservado este derecho deberá circular su ponencia dentro del término de diez (10) días contados a partir de la fecha cuando se haya notificado dicha reserva. Los otros Jueces y las otras Juezas tendrán un término adicional de cinco (5) días para expresar su posición sobre la ponencia descrita anteriormente. Simultáneamente concluidos estos términos, se certificarán todas las ponencias o expresiones y, desde ese momento, no se certificará ninguna otra ponencia o expresión sobre el caso.

(c) En el caso de las ponencias circuladas durante los últimos diez (10) días del término de sesiones, los términos antes prescritos comenzarán a contar desde el primer día hábil del próximo periodo de sesiones. Particularmente, respecto a las ponencias circuladas durante el primer mes de sesiones, el término para devolver o indicar criterio alguno será de cuarenta (40) días. Por acuerdo de la mayoría del Tribunal, podrán continuar certificándose las ponencias durante el periodo de receso del Tribunal siguiendo los términos expresados previamente.

En todas las situaciones dispuestas en esta regla no se certificará ponencia alguna que no se haya circulado antes entre todos los integrantes y todas las integrantes del Tribunal. El término "ponencia" incluye sentencias, opiniones, votos particulares o explicativos, así como cualquier otra expresión escrita de un Juez o de una Jueza.

.     .     .     .     .     .     .     .

**Regla 9. Secretaría del Tribunal Supremo**

El Secretario o la Secretaria del Tribunal será un funcionario de alto rango gerencial y administrativo designado por el Pleno del Tribunal Supremo. El Secretario o Secretaria será responsable del buen manejo de su Oficina y ejercerá todas las facultades necesarias para asegurar y supervisar el cumplimiento con los deberes que emanan de este Reglamento.

(a) La Secretaría estará abierta al público desde las 8:30 a.m. hasta las 5:00 p.m., pero el Tribunal se considerará siempre abierto para los fines de expedir cualquier mandamiento. El Secretario o la Secretaria está autorizado o autorizada para aumentar las horas de oficina a todos o a algunos de sus empleados o a todas o algunas

de sus empleadas cuando así lo requiere el trabajo del Tribunal.

(b) Será deber del Secretario o de la Secretaria recibir y archivar todos los autos, las copias y otros escritos y documentos que se le presenten con tal objeto, foliar todos los expedientes, guardarlos con la debida seguridad y desempeñar las demás funciones correspondientes a su cargo.

(c) El Secretario o la Secretaria velará por que todos los escritos que se presenten al Tribunal cumplan con las disposiciones de este Reglamento. Cuando cualquier escrito no cumpla con dichas disposiciones, el Secretario o la Secretaria anotará el hecho de su presentación, pero lo devolverá reteniendo sólo una copia con un señalamiento de las deficiencias encontradas, las cuales deberán corregirse dentro del término jurisdiccional o de estricto cumplimiento, según sea el caso. Esta disposición no releva al abogado o a la abogada de su responsabilidad de perfeccionar el recurso dentro del término jurisdiccional o de estricto cumplimiento, según sea el caso.

(d) El Secretario o la Secretaria expedirá copias certificadas de los expedientes y documentos públicos bajo su custodia, a solicitud y pago previo de los derechos que fija la ley. De la misma manera, expedirá copia certificada de las traducciones que se hayan hecho de dichos documentos en la forma que dispone la sec. 502 de este título, la cual enumera los deberes del Negociado de Traducciones.

(e) El Secretario o la Secretaria archivará y conservará todos los acuerdos del Tribunal y cualquier otro documento que se le confíe. Notificará a las partes toda decisión del Tribunal, manteniendo constancia de la fecha de su registro y de su notificación a las partes.

(f) El Secretario o la Secretaria custodiará el sello del Tribunal y se considerarán auténticos todos los documentos firmados por él o ella en original o facsímil y que tengan estampado dicho sello.

(g) En todo caso en que cualquier resolución o sentencia del Tribunal requiera la expedición de un mandamiento a cualquier persona, el Secretario o la Secretaria preparará el correspondiente mandamiento y lo expedirá bajo su firma y el sello del Tribunal, ordenándole a dicha persona que cumpla con lo dispuesto por el Tribunal. Igualmente expedirá, en los casos apropiados, un mandamiento al alguacil o alguacila para que éste o ésta notifique a determinada persona o determinadas personas cualquier decisión del Tribunal.

(h) El Secretario o la Secretaria llevará un registro de todos los casos y asuntos que se presenten ante este Tribunal, en el cual deberá incluir un breve resumen del estado actual de cada uno de ellos. Llevará, además, un registro independiente sobre:

> (1) los asuntos de jurisdicción original;
>
> (2) las apelaciones civiles del Tribunal de Apelaciones;
>
> (3) los *certiorari*;
>
> (4) los recursos gubernativos;
>
> (5) las certificaciones;
>
> (6) las presentaciones de quejas o querellas presentadas contra abogados y abogadas, notarios y notarias, o Jueces y Juezas;
>
> (7) solicitudes en auxilio de jurisdicción o mociones urgentes;
>
> (8) solicitudes de vistas orales;
>
> (9) los escritos misceláneos de la naturaleza que sean, en asuntos no relacionados con casos ante el Tribunal, y
>
> (10) cualquier otro recurso para el cual no se haya dispuesto un registro. El Secretario o la Secretaria podrá llevar libros de registro, de manera auxiliar, conforme a lo antes dispuesto.

(i) El Secretario o la Secretaria llevará un registro en orden cronológico de todas las personas autorizadas por este Tribunal a ejercer la abogacía y la notaría. Todo abogado y toda abogada deberá registrar su firma en dicho registro. Los notarios y las notarias deberán registrar, además, su signo, sello y rúbrica.

El Secretario o la Secretaria tendrá a su cargo el Registro Único de Abogados y Abogadas de Puerto Rico con el nombre y apellidos de todos los abogados autorizados y todas las abogadas autorizadas a postular ante los tribunales y a ejercer la notaría, las fechas en que fueron admitidos y admitidas al ejercicio de su profesión, su número ante el Tribunal Supremo, los números de teléfono de su oficina y los personales, el número de fax, su dirección postal personal y de oficina, dirección física

de oficina y residencia, localización de la oficina notarial (si la tiene), y su dirección electrónica.

Todo abogado, y toda abogada, incluyendo a los notarios y las notarias, tendrán la obligación de mantener actualizados sus datos y realizar cualquier cambio en la información que consta en el RUA. Deberán presentarse de forma complementaria una declaración especial al Tribunal cuando se actualicen datos o información en el RUA que puedan dar lugar a la concesión o revisión de una exclusión al amparo del Reglamento para la Asignación de Abogados y Abogadas de Oficio de Puerto Rico.

Esta declaración especial se presentará electrónicamente, mediante el sistema habilitado a esos fines, y contendrá una certificación de que el perfil en el RUA y toda la información que allí conste están actualizados. En particular, confirmará que la información de contacto (teléfonos, direcciones postales y físicas de su residencia y oficina, localización de la oficina notarial [si la tiene], y direcciones de correo electrónico) es la correcta y que ha actualizado su historial de empleo y de materias de práctica jurídica. La declaración especial incluirá, además, la solicitud para que el Tribunal conceda una solicitud de exclusión o reconsidere una exclusión concedida a tenor con las disposiciones de la Regla 7 del Reglamento para la Asignación de Abogados y Abogadas de Oficio, según aplique.

(j) El Secretario o la Secretaria llevará un registro de abogados y abogadas que han sido suspendidos y suspendidas o separados y separadas del ejercicio de la profesión, y otro registro similar para quienes han sido separados y separadas del notariado. Ambos registros indicarán la fecha de suspensión o separación y el término de la misma.

(k) El Secretario o la Secretaria no permitirá que se saque del Tribunal expediente o documento alguno que esté bajo su custodia, excepto cuando medie una orden del Tribunal o del Juez Presidente o de la Jueza Presidenta; durante el receso del Tribunal, cuando medie una orden del presidente o de la presidenta de sala, del Juez o de la Jueza de turno, según sea el caso, o de una mayoría de los miembros o de las miembros de la sala.

(l) El Secretario o la Secretaria remitirá a la Oficina de Administración de los Tribunales, al Panel Central de Investigaciones, al Secretario o Secretaria de Justicia, a la Biblioteca del Tribunal Supremo, a la Oficina de la Compiladora, a las entidades que agrupan a

los abogados y abogadas y a los notarios y notarias, a las bibliotecas de las facultades de derecho y a cualquier entidad bona fide que lo solicite para su correspondiente publicación, copia digital en español de todas las opiniones y sentencias que emita el Tribunal.

(m) En todos los documentos que se presenten en la Secretaría, el Secretario o la Secretaria estampará la fecha y hora de su presentación, para lo que podrá usar un reloj-fechador.

(n) Cuando los abogados y las abogadas o las partes incumplan cualquier disposición de este Reglamento, el Secretario o la Secretaria informará de ello al Tribunal para la determinación que proceda.

(ñ) El Secretario o la Secretaria notificará a las partes la fecha cuando los casos queden finalmente sometidos para su adjudicación en los méritos por el Tribunal Supremo.

(o) El Secretario o la Secretaria llevará un registro de abogados y abogadas que ofrezcan servicios profesionales a través de una sociedad de responsabilidad limitada creada al amparo de las secs. 1861 *et seq.* del Título 10 , conocidas como la Ley de Sociedades de Responsabilidad Limitada. En dicho registro, el Secretario o la Secretaria inscribirá el nombre de la sociedad, la dirección y el número de teléfono de la oficina principal de la sociedad y los nombres, las direcciones y los números de teléfonos de los socios propietarios o de las socias propietarias. También el Secretario o la Secretaria certificará que la sociedad ha presentado ante el Departamento de Estado los documentos requeridos por la Ley de Sociedades de Responsabilidad Limitada.

(p) Las solicitudes para la concesión de una causa de exclusión o exención al amparo del Reglamento para la Asignación de Abogados y Abogadas de Oficio de Puerto Rico se concederán por el Secretario o la Secretaria del Tribunal, salvo las solicitudes de exclusión por razón de una incapacidad permanente o indefinida, cuya adjudicación quedará reservada exclusivamente al Tribunal Supremo.

De denegarse una causa de exención o de exclusión solicitada, el Secretario o la Secretaria deberá establecer las razones para su denegación. El abogado o la abogada inconforme con la determinación podrá presentar una petición de reconsideración ante el Secretario o la Secretaria del Tribunal. Toda petición de reconsideración deberá presentarse de forma electrónica en un término de diez (10) días laborables desde la fecha de notificación

de la determinación. Se denegará de plano cualquier solicitud de prórroga para presentar una petición de reconsideración.

Si, como resultado de una petición de reconsideración, el Secretario o la Secretaria enmienda o de alguna forma modifica su determinación inicial, el abogado afectado o la abogada afectada podrá presentar una nueva petición de reconsideración ante el Secretario o la Secretaria dentro de un plazo de diez (10) días laborables contados desde la notificación de la determinación del Secretario o la Secretaria.

El abogado o la abogada podrá presentar ante el Tribunal Supremo una moción de reconsideración dentro de un plazo de tres (3) días laborables desde la fecha de notificación de la determinación final del Secretario o de la Secretaria. Conforme la Regla 4(b) de este Reglamento, el Tribunal se organizará en salas de despacho para atender esta moción de reconsideración. Para recomendar la concesión de una moción de reconsideración, se requerirán los votos de por lo menos la mitad de los Jueces o de las Juezas que intervengan. Cuando una sala determine que la petición de reconsideración deberá ser concedida, lo referirá al Pleno del Tribunal, quien determinará finalmente si concede la reconsideración referida.

Cuando un abogado o una abogada presente una declaración especial para solicitar una exclusión por razón de una incapacidad permanente o indefinida, el Tribunal se organizará, igualmente, en salas de despacho. Para recomendar la concesión de esta causa de exclusión, se requerirán los votos de por lo menos la mitad de los Jueces o de las Juezas que intervengan. Cuando una sala determine que deberá ser concedida, referirá la solicitud al Pleno del Tribunal. El Pleno del Tribunal determinará finalmente si concede la causa de exclusión referida. Las mociones de reconsideración ante el Pleno del Tribunal Supremo serán resueltas por éste, conforme las disposiciones de la Regla 45 de este Reglamento.

.   .   .   .   .   .   .   .

**Regla 12. Admisión al ejercicio de la abogacía**

(a)   Requisito de examen

Todo y toda aspirante al ejercicio de la abogacía en el Estado Libre Asociado de Puerto Rico deberá aprobar un examen de reválida que será preparado y administrado por una Junta Examinadora de Aspirantes al Ejercicio de la Abogacía nombrada por este Tribunal.

(b)  Junta Examinadora; reglamento

La composición de la Junta Examinadora de Aspirantes al Ejercicio de la Abogacía; el nombramiento, los requisitos y los atributos de sus miembros, su organización y funcionamiento; los requisitos y condiciones que deberán reunir y cumplir los y las aspirantes a tomar el examen de reválida, y la naturaleza de los exámenes, las materias que estos deben cubrir, su preparación, administración y corrección, se disponen en el Reglamento de la Junta Examinadora de Aspirantes al Ejercicio de la Abogacía vigente.

(c)  Comisión de Reputación y juramento

Todo y toda aspirante al ejercicio de la abogacía que haya aprobado los exámenes de reválida deberá comparecer ante la Comisión de Reputación de Aspirantes al Ejercicio de la Abogacía.

Esta Comisión examinará, además, cualquier asunto que el Tribunal le remita relativo a la readmisión de un abogado o de una abogada a la profesión.

(d)  Juramento

Luego de cumplir con los requisitos exigidos por dicha Comisión y aprobados por este Tribunal, y que la Comisión expida un certificado acreditativo de su buena reputación, el o la solicitante prestará juramento ante el Tribunal Supremo en Pleno o ante cualquiera de sus salas o de sus Jueces y Juezas.

Una vez el o la solicitante haya prestado juramento, deberá dejar constancia en la Secretaría del Tribunal de su dirección física y postal. Asimismo, conforme a la Regla 9(i), deberá notificar al Secretario o a la Secretaria cualquier cambio posterior de dirección.

(e)  Expedientes personales de los abogados y las abogadas

(1) Los expedientes personales de los abogados y las abogadas, salvo lo dispuesto más adelante, tienen carácter de documento público y estarán accesibles previa solicitud por escrito a personas con interés legítimo. Los siguientes documentos que forman parte de los expedientes personales de los abogados y las abogadas se mantendrán aparte, en sobre sellado, y no estarán accesibles a examen, salvo una autorización expresa del Tribunal:

(A)    La Declaración Informativa del Aspirante (Formulario 51(J)).

(B)    Cualquier enmienda a la Declaración Informativa del Aspirante (Formulario 52(J)).

(C)    La transcripción de créditos.

(D)    La Hoja de Codificación de Información Personal del Aspirante (Formulario 193(J)).

(E)    El Informe de Puntuación y cualesquiera otros documentos específicos que sean requeridos al o a la aspirante para propósitos de evaluar su reputación y evaluar su capacidad física o mental.

(2) En cuanto a los expedientes personales de los abogados y las abogadas que obren en la Secretaría del Tribunal, en los que no se hayan sellado aún en sobre aparte los documentos confidenciales mencionados en la cláusula anterior, los funcionarios y las funcionarias de la Secretaría encargados de su custodia aplicarán las siguientes normas a una solicitud para examinar el expediente personal. Antes de entregar el expediente a la persona interesada, apartarán los documentos aludidos en la cláusula anterior y los guardarán en un sobre. Acto seguido, redactarán y firmarán una nota breve haciendo constar la gestión realizada.

(3) En todo expediente personal, se anotará el nombre y la dirección de la persona que solicite examinarlo. El expediente personal que vaya a ser examinado se entregará siempre sin el sobre sellado, el cual será retenido temporalmente por la persona custodia. Una vez examinado y devuelto el expediente por el interesado, volverá a unirse a este el sobre sellado y todo el expediente se reintegrará al archivo correspondiente.

Por ninguna circunstancia, salvo una orden expresa del Tribunal, los documentos contenidos en el sobre sellado deberán mostrarse.

(f)    Admisión por cortesía

(1) Cualquier persona admitida al ejercicio de la abogacía en una jurisdicción estadounidense podrá solicitar ser autorizada por cortesía por este Tribunal para postular como abogado o abogada en Puerto Rico en casos especiales ante los tribunales, agencias

administrativas y procedimientos sobre métodos alternos de resolución de disputas, incluyendo procesos de arbitraje.

Las solicitudes debidamente presentadas serán concedidas por la Secretaria o Secretario del Tribunal, salvo que la cantidad de solicitudes presentadas por la persona solicitante demuestre que en realidad se encuentra practicando la abogacía de forma regular en Puerto Rico. A estos fines, cuando una persona presente seis solicitudes o más en un periodo de un año, o presenta una solicitud cuando ya está admitido por cortesía para comparecer en cinco casos que permanecen activos, el Tribunal tomará en consideración los siguientes criterios para determinar si concede la solicitud:

(A) La escasez de abogados y abogadas locales que cuenten con conocimiento especializado sobre el asunto del caso;

(B) la complejidad del asunto del caso sobre el cual la persona solicitante es especialista;

(C) la existencia de una relación prolongada de abogado-cliente;

(D) la existencia de cuestiones legales propias de la jurisdicción donde el abogado regularmente practica;

(E) la necesidad de un descubrimiento de prueba amplio y completo en la jurisdicción donde la persona solicitante practica;

(F) cualquier circunstancia que afecte el bienestar personal y financiero del cliente.

(2) La solicitud deberá ser endosada por una persona debidamente admitida al ejercicio de la abogacía por este Tribunal, quien dará fe de la capacidad de la persona solicitante para postular como abogado o abogada en el caso correspondiente. El abogado o abogada que endose la solicitud también deberá:

(A) Aparecer como abogado o abogada de récord en el caso correspondiente junto con la persona solicitante;

(B) firmar cualquier alegación, moción o documento que se prepare con relación al caso correspondiente;

(C) ser notificado de todos los procesos, alegaciones, mociones y otros documentos que se notifiquen a la persona solicitante;

(D) acompañar a la persona que sea admitida por cortesía cada vez que esta postule o participe en una deposición o en cualquier otro procedimiento relacionado con el caso correspondiente, salvo que sea excusado por el foro que atiende el caso.

La persona solicitante y el abogado o abogada endosante deberán suscribir la solicitud de admisión por cortesía.

Se deberá unir a la solicitud un certificado expedido por el más alto tribunal de cada una de las jurisdicciones de Estados Unidos de América en las cuales la persona solicitante esté admitida al ejercicio de la profesión. El certificado hará constar el hecho de su admisión y que la persona solicitante se mantiene debidamente acreditada y activa a la fecha del certificado. Este certificado debe haberse expedido dentro de los noventa días previos a la presentación de la solicitud. La persona solicitante no deberá estar desaforada ni suspendida de jurisdicción alguna. Además, la admisión del abogado o la abogada endosante deberá estar debidamente acreditada en Puerto Rico, independientemente de que ejerza la profesión principalmente en otra jurisdicción.

La persona solicitante deberá informar si alguna autoridad disciplinaria competente en cualquiera de las jurisdicciones a las que está admitido ha iniciado algún proceso disciplinario en su contra dentro de los últimos cinco años. Asimismo, deberá informar si, en algún momento, ha sido disciplinado o suspendido de la práctica de la abogacía en alguna jurisdicción. En su informe, el solicitante deberá detallar: la agencia u organismo promovente, el número del caso, las causas y el estado actual o resultado del procedimiento.

También deberá informar si alguna jurisdicción estadounidense le ha negado la admisión por cortesía durante los últimos cinco años. Este deber incluye el de divulgar la jurisdicción y las razones expuestas por la entidad encargada de admitir al ejercicio de la abogacía para negar la solicitud. Asimismo, deberá informar las solicitudes de admisión por cortesía que haya presentado ante este Tribunal durante los pasados dos años. Esto incluye divulgar el caso correspondiente a cada una, la fecha de la solicitud y la determinación de este Tribunal. La persona que presenta la solicitud de admisión por cortesía debe certificar que está familiarizada con las

reglas procesales y éticas de Puerto Rico. Los abogados suscribientes deberán certificar que la información provista es, a su mejor juicio, cierta y correcta.

La solicitud de admisión por cortesía deberá incluir sellos de rentas internas por un valor de ochocientos dólares ($800), salvo que el Tribunal autorice una dispensa por tratarse de un caso pro bono o por justa causa. En los casos consolidados, deberá incluir sellos de rentas internas para cada uno de los cuales su potencial cliente sea parte. La solicitud estará exenta del pago de aranceles cuando un abogado o una abogada de las clínicas de asistencia legal de una escuela de derecho, de Pro-Bono Inc. del Colegio de Abogados de Puerto Rico, de Servicios Legales de Puerto Rico, Inc. o de la Sociedad para Asistencia Legal de Puerto Rico endosa la solicitud de admisión por cortesía para proveer servicios legales pro bono a través de dicha entidad. Si el Tribunal determina denegar la solicitud de admisión por cortesía, no se reembolsará la tasa pagada.

(3) Si se autoriza la admisión por cortesía, la persona solicitante quedará automáticamente sometida a la jurisdicción disciplinaria del Tribunal Supremo de Puerto Rico y tendrá el deber de actualizar de forma continua la información provista en la solicitud. La persona solicitante, así como el abogado o la abogada endosante, serán responsables ante su cliente y el foro.

(4) El Secretario o la Secretaria del Tribunal llevará un registro de las admisiones por cortesía concedidas. El registro contendrá el nombre de la persona admitida por cortesía, el nombre del abogado o abogada endosante, la fecha de la solicitud y de la otorgación del permiso. Además, incluirá el nombre de las partes, número del caso y el foro en el que se ventila el procedimiento para el cual el solicitante fue admitido.

(5) No será necesario que una persona no admitida al ejercicio de la abogacía en Puerto Rico solicite admisión por cortesía cuando solamente:

(A) Preste servicios legales en Puerto Rico en conexión o en ayuda a procedimientos que se estén llevando a cabo en otras jurisdicciones en las que la persona está debidamente admitida al ejercicio de la abogacía;

(B) consulte con una persona admitida al ejercicio de la abogacía en Puerto Rico con relación a procedimientos pendientes o potenciales en los que un cliente de este último es parte;

(C) consulte con una persona en Puerto Rico, que esté considerando ser o sea parte en un procedimiento en cualquier jurisdicción estadounidense, sobre la posibilidad de contratar sus servicios para ese procedimiento, siempre y cuando la consulta surja a petición del cliente potencial;

(D) brinde servicios legales en Puerto Rico a nombre de un cliente en preparación para un procedimiento a presentarse en Puerto Rico, siempre y cuando tenga la creencia razonable de que es elegible para ser admitida por cortesía en Puerto Rico;

(E) brinde servicios legales a un cliente o cliente potencial en Puerto Rico en preparación para un procedimiento a presentarse fuera de Puerto Rico, siempre y cuando tenga la creencia razonable de que es elegible para ser admitida en la jurisdicción donde se espera que se presente el pleito; o

(F) brinde servicios legales, mientras está fuera de Puerto Rico, a un cliente ubicado en Puerto Rico que solicite sus servicios con relación a un procedimiento potencial o pendiente en o fuera de Puerto Rico.

Las personas que no estén admitidas al ejercicio de la abogacía en Puerto Rico podrán actuar en los escenarios antes descritos, con relación a procedimientos potenciales o pendientes si tienen la creencia razonable de que serán admitidos por cortesía por este Tribunal, aun cuando eventualmente el procedimiento no se presente o se deniegue la admisión por cortesía.

(6) El que una persona haya sido admitida por cortesía conforme a esta regla, o esté brindando servicios legales en Puerto Rico bajo cualquiera de las circunstancias previstas en los incisos que anteceden, no significa que está autorizada a representar a otra persona o hacer creer al público que está admitida al ejercicio de la abogacía en Puerto Rico.

(7) Toda solicitud de admisión por cortesía deberá tramitarse completando y presentando en la Secretaría del Tribunal el formulario de Solicitud de Admisión por Cortesía, que se hace formar parte de esta regla como anejo.

(8) El Tribunal Supremo podrá revocar una admisión por cortesía por justa causa.

(g) Ejercicio de la abogacía por estudiantes de Derecho.

A toda persona que curse estudios conducentes al grado de *Juris Doctor* en una de las escuelas de Derecho acreditadas por la Junta de Instituciones Postsecundarias y por este Tribunal, podrá permitírsele postular ante el Tribunal de Primera Instancia, el Tribunal de Apelaciones y los organismos administrativos del Estado Libre Asociado de Puerto Rico si reúne los requisitos y cumple con las condiciones siguientes:

(1) Haber completado y aprobado por lo menos dos terceras partes de los requisitos establecidos por la escuela de Derecho a que perteneciere para obtener el grado de *Juris Doctor*.

(2) Estar participando en un programa de práctica por estudiantes de Derecho, auspiciado y administrado por la escuela de Derecho en que curse estudios.

(3) Poseer una autorización suscrita por el decano o la decana de la escuela de Derecho en que curse estudios, acreditativa de que reúne los requisitos mínimos establecidos por esta regla y de que es una persona bien reputada moralmente. Dicha autorización expirará una vez cese como estudiante de la escuela de Derecho que haya expedido la autorización o porque haya sido revocada por el decano o la decana de dicha escuela.

(4) Prestar juramento, el cual se consignará en la autorización, de que reúne los requisitos establecidos por esta regla y que se compromete a regirse por las condiciones en ella establecidas y por los cánones de ética que rigen la conducta de los abogados y las abogadas de Puerto Rico.

(5) Desempeñar sus funciones de práctica bajo la supervisión directa e inmediata de un abogado autorizado o una abogada autorizada a ejercer la abogacía por este Tribunal, designado o designada conforme al programa de practica aprobado por la escuela de Derecho a que pertenezca el o la estudiante. Dicho abogado o dicha abogada firmará la autorización expresando su conformidad como supervisor o supervisora y responsabilizándose de la conducta y el buen proceder del o de la estudiante.

(6) Presentar en todo caso en que haya de intervenir ante un tribunal de justicia u organismo administrativo del Estado Libre Asociado de Puerto Rico, para que forme parte de los autos, una moción escrita,

notificada a todas las partes de dicho caso, en la que conste el consentimiento expreso de la parte a cuyo favor ha de intervenir. La intervención del o de la estudiante de Derecho deberá constar con la aprobación del tribunal o del organismo administrativo, bajo aquellas condiciones que estos impongan.

(7) Prestar sus servicios gratuitamente y como parte de su adiestramiento.

(h) Ejercicio de la abogacía y la notaría en sociedades de responsabilidad limitada.

Los abogados, las abogadas, los notarios y las notarias que ofrezcan servicios profesionales a través de una sociedad creada al amparo de la Ley de Sociedades de Responsabilidad Limitada, secs. 1861 *et seq.* del Título 10, deberán presentar ante el Secretario o la Secretaria del Tribunal Supremo, para ser incluidos e incluidas en el registro que establece la Regla 9, copia de la escritura constitutiva de la sociedad de responsabilidad limitada que exprese el nombre de la sociedad; la dirección y el número de teléfono de la oficina principal; el nombre, la dirección y el número de teléfono del socio gestor; los nombres, las direcciones y los números de teléfonos de los socios propietarios y las socias propietarias de la sociedad, más la certificación correspondiente que acredite que la sociedad se ha inscrito en el Departamento de Estado.

Además, presentarán copia de las subsiguientes actas de renovación de la sociedad que la Ley de Sociedades de Responsabilidad Limitada, secs. 1861 *et seq.* del Título 10, requieren presentar anualmente en el Departamento de Estado y, en el caso de la disolución de la sociedad, la renuncia o el retiro de los socios y las socias, copia de la notificación a tales efectos.

También deberán presentar evidencia que acredite que la sociedad ha garantizado el pago de cualquier compensación por impericia profesional que los socios y las socias estén obligados u obligadas a realizar.

A los notarios y las notarias se les deducirá la fianza notarial prestada de la responsabilidad financiera en concepto de impericia profesional exigida al amparo de la Ley de Sociedades de Responsabilidad Limitada, secs. 1861 *et seq.* del Título 10.

Cualquiera de las siguientes alternativas podrá ser utilizadas por la sociedad como un mecanismo para cumplir con la garantía exigida por la Ley de Sociedades de

Responsabilidad Limitada, secs. 1861 *et seq.* del Título 10:

(1) Una fianza expedida a favor de la sociedad por una compañía aseguradora autorizada para hacer negocios en Puerto Rico, que deberá ser certificada en cuanto a su suficiencia por el Comisionado de Seguros del Estado Libre Asociado de Puerto Rico, para responder por el pago de cualquier compensación en concepto de impericia profesional. Dicha fianza será por la cantidad mínima de cincuenta mil dólares ($50,000), multiplicada por el número de abogados y abogadas que ofrecen servicios profesionales a través de la sociedad al momento cuando se expida o renueve la fianza, pero el total de la fianza nunca será menor de cien mil dólares ($100,000) ni excederá un millón de dólares ($1,000,000).

(2) Un documento acreditativo de un seguro de responsabilidad profesional con una cubierta mínima de cien mil dólares ($100,000), excluyendo cualquier deducible que aplique, salvo que esté cubierto por una fianza, carta de crédito u otro instrumento que demuestre la existencia de fondos para cubrir el monto del deducible. El seguro será por cincuenta mil dólares ($50,000) multiplicado por el número de abogados y abogadas que ofrecen servicios profesionales a través de la sociedad al momento cuando se expida o renueve la fianza, pero el total de la cubierta del seguro nunca será menor de cien mil dólares ($100,000) ni excederá un millón de dólares ($1,000,000).

(3) Una carta de crédito irrevocable expedida a nombre de la sociedad o un documento que demuestre que se han separado o segregado fondos por no menos de cien mil dólares ($100,000) a un máximo de un millón de dólares ($1,000,000). La cantidad segregada o separada será cincuenta mil dólares ($50,000) multiplicada por el número de abogados y abogadas que ofrecen servicios profesionales a través de la sociedad al momento cuando se expida o renueve la carta de crédito o el documento que acredite la separación o segregación de los fondos, pero el total de los fondos segregados nunca será menor de cien mil dólares ($100,000) ni excederá un millón de dólares ($1,000,000).

Dichos fondos separados o segregados se mantendrán como depósito en plica en una entidad bancaria establecida bajo las leyes del Estado Libre Asociado de Puerto Rico o de cualquier estado o territorio de Estados Unidos, y autorizada para hacer negocios en Puerto Rico, o en un fideicomiso constituido bajo las leyes del Estado Libre Asociado de Puerto Rico o de cualquier estado o territorio de Estados Unidos y autorizado para hacer negocio en Puerto Rico.

.    .    .    .    .    .    .    .

**Regla 14. Quejas y procedimientos disciplinarios contra abogados, abogadas, notarios y notarias**

(a) Esta regla establece el procedimiento disciplinario aplicable a los abogados, las abogadas, los notarios y las notarias.

(b) Cualquier queja escrita y bajo juramento que el Tribunal o cualquiera de sus Jueces o Juezas reciba respecto al comportamiento de un abogado, una abogada, un notario o una notaria, será debidamente anotada por el Secretario o la Secretaria en el registro especial correspondiente que llevará a esos efectos. No se anotará ni practicará asiento alguno sobre una queja sin jurar o carente de suficiente especificación de los hechos en que se funde.

(c) El Secretario o la Secretaria enviará copia de la queja al abogado, la abogada, el notario o la notaria, según sea el caso, para que dentro del término de diez (10) días se exprese sobre ésta. El Secretario o la Secretaria podrá prorrogar el término aquí dispuesto por circunstancias meritorias. El abogado, la abogada, el notario o la notaria notificará a la parte promovente de la queja por correo certificado con acuse de recibo o por correo electrónico, una copia de la contestación que presente al Tribunal, haciendo constar en esta el hecho de la notificación.

(d) Cuando el abogado, la abogada, el notario o la notaria haya presentado su contestación o haya transcurrido el término concedido para contestar, el Secretario o la Secretaria remitirá la queja y la contestación, o la queja y una expresión sobre la falta de contestación, según sea el caso, al Procurador o Procuradora General o al Director o Directora de la Oficina de Inspección de Notarías, respectivamente, para que, dentro del término de sesenta (60) días, se expresen sobre estas y hagan la recomendación que estimen pertinente.

(e) Una vez el Tribunal reciba la recomendación del Procurador o Procuradora General o del Director o Directora de la Oficina de Inspección de Notarías, podrá ordenar el archivo y sobreseimiento de la queja, ordenar que se amplíe la investigación de la queja o someter el asunto a uno de sus Jueces o Juezas para la determinación de causa, quien informará su criterio y recomendaciones al Pleno. El Tribunal podrá imponer las sanciones que correspondan sin necesidad de trámites ulteriores cuando

surjan de la propia contestación hechos que lo justifiquen. Luego de completado el trámite anterior, el Tribunal podrá ordenar al Procurador o Procuradora General que presente la querella correspondiente.

(f) Una vez presentada la querella, el Secretario o la Secretaria la anotará en el libro de presentaciones correspondiente, e inmediatamente expedirá un mandamiento al abogado o al notario involucrado, o a la abogada o la notaria involucrada requiriéndole que la conteste dentro de los quince (15) días de su notificación.

(g) El Procurador o Procuradora General podrá a iniciativa propia presentar querellas contra cualquier abogado, abogada, notario o notaria. Una vez presentada, se le dará el mismo trato que si hubiese sido formulada por orden del Tribunal.

(h) Se celebrará una vista para recibir la prueba sobre la querella. El Tribunal podrá ordenar que se celebre ante sí o, en el uso de su discreción, nombrar un Comisionado o Comisionada Especial para que reciba la prueba y rinda un informe con sus determinaciones de hecho.

El Comisionado o Comisionada Especial que no sea empleado regular del Estado Libre Asociado de Puerto Rico, sus agencias o corporaciones públicas, recibirá dietas a razón de cien dólares ($100) por cada día de vista o por cada día en que desempeñe las actividades oficiales relacionadas con su designación.

(i) El Comisionado o Comisionada Especial señalará la vista o las vistas que sean necesarias para recibir la prueba, y el Secretario o la Secretaria expedirá las citaciones y otros mandamientos que se requieran a esos fines de la misma manera que si fueran ordenadas por el Tribunal. El Comisionado o la Comisionada Especial podrá disponer la celebración de conferencia con antelación a la vista.

(j) La parte querellada tendrá derecho a confrontar a los testigos en su contra durante la vista, podrá contrainterrogarlos, podrá examinar la prueba documental o material que se presente en su contra y también podrá presentar testigos y prueba documental y material a su favor. La parte querellada tendrá derecho a que se le suministre copia de cualquier declaración jurada que hubiese hecho durante cualquier etapa investigativa de la querella, aun cuando ésta no sea ofrecida en evidencia. No se aplicarán las reglas de descubrimiento de prueba a menos que el Tribunal lo disponga de otro modo por estimarlo indispensable dentro de las circunstancias del caso.

(k) El Comisionado o Comisionada Especial resolverá los planteamientos sobre admisibilidad de la prueba conforme a derecho. Terminada la presentación de la prueba, el Comisionado o Comisionada rendirá un informe con sus determinaciones de hechos, las cuales se fundarán exclusivamente en la prueba presentada y admitida. Cualquier conflicto en cuanto a la prueba se dirimirá sobre la base de la credibilidad que esta merezca. El informe deberá presentarse al Tribunal, con copia a las partes, dentro de los treinta (30) días de terminada la presentación de la prueba. Junto con el informe, se remitirá toda la prueba documental y material que haya sido presentada. Aquella prueba que haya sido presentada pero no admitida se identificará claramente como tal y se indicará, además, la razón por la cual no fue admitida.

(l) Cada parte tendrá un término simultáneo de veinte (20) días, contados desde la notificación del informe, para ofrecer sus comentarios u objeciones, y sus recomendaciones en cuanto a la acción que deba tomar el Tribunal.

(m) Transcurrido dicho término, el Tribunal resolverá lo que en derecho proceda.

(n) Se grabará el sonido de toda vista que se celebre, ya sea ante el propio Tribunal o ante un Comisionado o Comisionada Especial. El operador o la operadora de la grabadora certificará la corrección de cualquier transcripción hecha. La grabación se transcribirá exclusivamente en los casos siguientes: (1) Cuando el Tribunal o el Comisionado o Comisionada Especial así lo ordene, por considerar la transcripción indispensable para formular sus determinaciones de hechos, o (2) cuando cualquiera de las partes objete las determinaciones de hechos del Comisionado o Comisionada Especial y el Tribunal considere indispensable la transcripción para resolver las objeciones. De no ser posible la grabación, se tomarán notas taquigráficas de la vista, las cuales solo se transcribirán en conformidad con las normas anteriores. Si por cualquier razón la transcripción de la prueba oral tarda indebidamente, el Tribunal podrá requerir al Comisionado o Comisionada Especial que proceda a formular sin ella sus determinaciones de hechos.

(ñ) Los informes adversos contra un notario o una notaria que presente el Director o Directora de la Oficina de Inspección de Notarías se regirán, en lo pertinente, por lo dispuesto en la Regla 81 del Reglamento Notarial de Puerto Rico, Ap. XXIV de este título.

(o) El Secretario o la Secretaria notificará con copia de todas las providencias que adopte el Tribunal al abogado o al notario involucrado o a la abogada o a la notaria involucrada, y a la parte promovente de la queja. Cualquier decisión del Tribunal que imponga sanciones se notificará, además, a la Oficina de Administración de los Tribunales, al Secretario o Secretaria de Justicia y al Colegio de Abogados y Abogadas de Puerto Rico. Si la sanción afecta en cualquier forma la capacidad del notario o de la notaria para actuar como tal, se notificará también al Secretario o Secretaria de Estado y al Director o Directora de la Oficina de Inspección de Notarías.

(p) Si el Tribunal ordena una suspensión indefinida o temporera o una separación permanente del abogado o de la abogada del ejercicio del notariado (directa o indirectamente al ordenar su separación del ejercicio de la profesión jurídica), el Secretario o la Secretaria expedirá inmediatamente un mandamiento al Alguacil o la Alguacila para que se incaute cuanto antes de los Protocolos y Registros de Testimonios del notario o la notaria, y los entregue al Director o Directora de la Oficina de Inspección de Notarías o a cualquier inspector de protocolos para que cumplan con lo dispuesto en las secs. 2104 y 2106 de este título. Esta incautación será sin perjuicio de que una vez terminada la separación temporera, el notario o la notaria solicite, mediante una moción al Tribunal, que le sean devueltos dichos Protocolos y Registros de Testimonios.

(q) En el caso de una queja contra un abogado, una abogada, un notario o una notaria, los informes de investigación y los documentos de la Oficina del Procurador General, o de cualquier otro organismo o persona que se presenten en la Secretaría del Tribunal con tal fin, o ante la consideración del Juez Presidente o Jueza Presidenta o del Tribunal, no estarán sujetos a inspección por el público hasta que el asunto haya sido resuelto finalmente. En el caso de que la queja diera lugar a la presentación de una querella, ambos expedientes estarán sujetos a inspección pública una vez se cumpla lo dispuesto en inciso (r) de esta Regla.

(r) Una vez presentada en la Secretaría del Tribunal la contestación a una querella formal, ambos documentos estarán sujetos a inspección pública, al igual que aquellos otros que se incorporen subsiguientemente al expediente durante la tramitación del caso.

(s) Si el abogado, la abogada, el notario o la notaria desea ser reinstalado o reinstalada luego de su suspensión del ejercicio de la abogacía, deberá presentar una moción

de reinstalación al Tribunal, ya que la reinstalación no será automática a menos que el Tribunal así lo disponga expresamente.

.    .    .    .    .    .    .    .    .

**Regla 25. Procedimiento en la certificación interjurisdiccional**

(a) Este Tribunal podrá atender cualquier asunto que le sea certificado por el Tribunal Supremo de Estados Unidos de América, por un Tribunal de Apelaciones de Circuito de Estados Unidos de América, por un Tribunal de Distrito de Estados Unidos de América o por el más alto tribunal apelativo de cualquiera de los estados de la Unión americana, cuando así lo solicite cualquiera de dichos tribunales, de existir ante el tribunal solicitante cualquier asunto judicial en el cual estén implicados cuestiones de derecho puertorriqueño que puedan determinar el resultado del asunto y respecto al cual, según la opinión del tribunal solicitante, no existan precedentes claros en la jurisprudencia de este Tribunal. Esta certificación será atendida por el Tribunal en Pleno.[10]

(b) Este Tribunal no expedirá la certificación solicitada cuando la cuestión planteada sea mixta, por incluir aspectos de derecho federal o de derecho estatal del tribunal solicitante y aspectos del derecho local de Puerto Rico, y deba ser resuelta por el tribunal solicitante.

(c) Cuando la cuestión planteada en el procedimiento de certificación sea la validez de un estatuto de Puerto Rico, impugnado bajo una disposición de la Constitución del Estado Libre Asociado de Puerto Rico, la certificación de la pregunta sólo procede si la disposición constitucional local no tiene equivalente en la Constitución federal.

(d) Dicha certificación se formalizará al presentarse la solicitud, la cual consistirá de una resolución a tales efectos emitida por el tribunal solicitante, *sua sponte* o

---

[10] Por deferencia a los tribunales que solicitan nuestra intervención mediante este mecanismo, entendemos que la solicitud de certificación debe ser evaluada por el Tribunal en Pleno y no por una de las Salas de Despacho. De esta forma, el foro peticionario tiene la certeza que, de no acogerse la solicitud de certificación, esta fue denegada por el Tribunal y no por una Sala de Despacho. Lo contrario dejaría al foro peticionario con una decisión de solo algunos de los integrantes del Tribunal, pero sin la opción de acudir a los demás mediante la presentación de mociones de reconsideración, a diferencia de las partes litigantes en los demás recursos.

a moción de cualquiera de las partes en el caso ante dicho tribunal.

(e) La orden de certificación incluirá:

(1) Las preguntas de derecho cuya contestación se solicita;

(2) una relación de todos los hechos relevantes a las preguntas que demuestre claramente la naturaleza de la controversia de la cual surgen, las cuales tienen que surgir de una determinación del tribunal consultor, bien por haber sido estipuladas por las partes o porque hayan sido ventiladas y adjudicadas en el proceso, y

(3) un apéndice en el que se incluirán el original y la copia certificada de aquella parte del expediente que, según el tribunal solicitante, sea necesario o conveniente remitir a este Tribunal para contestar las preguntas.

(f) El Juez o la Jueza del tribunal solicitante que haya entendido en el asunto firmará la solicitud de certificación. El Secretario o la Secretaria del tribunal solicitante enviará, bajo su firma y el sello del tribunal, la solicitud a la Secretaría de este Tribunal.

(g) Cuando lo estime necesario, este Tribunal podrá requerir del tribunal solicitante que le envíe el original o la copia certificada de la totalidad o de parte del expediente, además de la documentación enviada como apéndice de la orden de certificación.

(h) Las partes en el caso original que deseen someter alegatos tendrán términos simultáneos de cuarenta (40) días para así hacerlo, contados desde la fecha de envío de la orden de certificación a este Tribunal por el Secretario o la Secretaria del tribunal solicitante. En dichos alegatos se hará constar su notificación al tribunal solicitante y a todas las partes en el caso. Cualquier parte podrá replicar a cualquier alegato así notificado dentro de los quince (15) días de su notificación. Los alegatos principales se regirán por las disposiciones de la Regla 33 en cuanto a su forma y contenido. Cualquier parte que desee presentar una argumentación oral deberá indicarlo mediante una moción fundamentada, presentada simultáneamente con su alegato principal, y su solicitud se resolverá conforme al reglamento de este Tribunal. Sin embargo, el Tribunal podrá, en cualquier momento, convocar a iniciativa propia a una vista oral cuando lo estime necesario. Los alegatos podrán ser en inglés o en español sin necesidad de traducción, pero todos los alegatos deben

estar firmados por un abogado admitido o una abogada admitida al ejercicio de su profesión por este Tribunal.

(i) El Secretario o la Secretaria enviará la opinión de este Tribunal en contestación a las preguntas de derecho que se le certifiquen al tribunal solicitante y a las partes, bajo su firma y el sello de este Tribunal. Dicha opinión, con las contestaciones del Tribunal a las preguntas certificadas, obligará a las partes.

(j) Cuando esté pendiente ante este Tribunal cualquier asunto judicial en el que esté implicada alguna cuestión referente al Derecho de cualquier estado de la Unión americana, y esta pueda determinar el resultado final del asunto, y si en la opinión de este Tribunal la jurisprudencia de dicho estado no contiene precedentes claros en cuanto a dicha cuestión de derecho, este Tribunal podrá, *sua sponte* o a moción de cualquier parte, certificar la cuestión de derecho al más alto tribunal de dicho estado.

(k) Cuando este Tribunal certifique una cuestión de derecho según se dispone en el inciso anterior, seguirá el procedimiento que dispongan al efecto las leyes del estado al que se haya de recurrir.

(l) La opinión que emita este Tribunal, según lo dispuesto en el inciso (i) de esta regla, será traducida al inglés por el Negociado de Traducciones del Tribunal Supremo, conforme lo disponen las secs. 501 a 506 de este título. Los costos de dicha traducción se dividirán por igual entre las partes en el caso original, a menos que el tribunal solicitante disponga otra cosa. Los costos de cualquier certificación que haga este Tribunal al tribunal de otro estado, según se dispone en el inciso (j) de esta regla, se dividirán por igual entre las partes ante este Tribunal, a menos que éste, por el bien de la justicia, disponga de otro modo.

.    .    .    .    .    .    .    .

**Regla 39. Notificaciones**

(a) Excepto las peticiones en los recursos de jurisdicción original, los cuales se ajustarán a las normas dispuestas para dichos recursos, todo recurso que se presente a este Tribunal se notificará a los abogados o las abogadas de las demás partes, o a las partes mismas si no tuviesen abogado o abogada, y se hará constar el hecho de la notificación en el propio escrito que se presente al Tribunal. Cuando haya varias partes, se notificará al abogado o abogada de cada una de ellas. Se

dispone, sin embargo, que cuando se trate de un recurso de *mandamus* dirigido contra un Juez o Jueza en relación con un caso que está pendiente ante su consideración, el peticionario deberá notificar al Juez o Jueza, a las demás partes en el pleito que originó la petición de *mandamus* y al tribunal donde se encuentre pendiente el caso en conformidad con esta regla.

La notificación se efectuará por correo certificado con acuse de recibo o mediante un servicio similar de entrega personal con acuse de recibo, o por correo electrónico.[11] La notificación a las partes se hará dentro del término jurisdiccional o de cumplimiento estricto, según sea el caso, para presentar el recurso. Cuando se efectúe por correo, se remitirá la notificación a los abogados o las abogadas de las partes a la dirección que surja del Registro Único de Abogados y Abogadas de Puerto Rico. Cuando las partes no estén representadas por un abogado o una abogada, se notificará a la dirección postal que surja del último escrito que conste en el expediente del caso. La fecha del depósito en el correo se considerará como la fecha de la notificación a las partes. La entrega personal deberá hacerse en la oficina de los abogados o las abogadas que representen a las partes y las notificaciones deberán entregarse a estos o estas, o a cualquier persona a cargo de la oficina. Si la parte o las partes no están representadas por abogado o abogada, la entrega se hará en el domicilio o la dirección de la parte o las partes, según ésta surja de los autos, a cualquier persona de edad responsable que allí se encuentre. En los casos de entrega personal, se certificarán la forma y las circunstancias de tal diligenciamiento, lo que se hará dentro de las próximas setenta y dos (72) horas desde que se efectuó la entrega. El término aquí dispuesto será de cumplimiento estricto.

En circunstancias no previstas por esta regla, el Tribunal, a iniciativa propia o a solicitud de parte, dispondrá el método de notificación que mejor se ajuste a las circunstancias particulares del caso.

(b) Cualquier escrito posterior que se presente se notificará simultáneamente a las partes. En el escrito se certificará la forma como se haya efectuado la notificación. Esta podrá hacerse personalmente, por correo certificado o correo electrónico.

---

[11] Se añadió el mecanismo de la notificación por correo electrónico con el propósito de atemperar el Reglamento a lo dispuesto en Lozada *Sánchez et al. v. JCA*, 184 DPR 898, 909-912 (2012). Allí se interpretó la Regla 67.2 de Procedimiento Civil, 32 LPRA Ap. V, al disponerse que se "puede notificar la presentación de un recurso ante este Foro por correo electrónico". *Íd.*, pág. 912.

.    .    .    .    .    .    .    .

**Regla 41. Vistas Orales**

(a) Solicitud de Vista Oral

Las partes podrán solicitar la celebración de una vista oral y el Tribunal, a su discreción, podrá concederla. La parte que desee informar oralmente el caso o el incidente de que se trate, deberá solicitarlo, en moción separada debidamente fundamentada o mediante estipulación. El Tribunal también podrá convocar a una vista oral sobre cualquier asunto cuando lo estime necesario.

Para que una moción en la que se solicita una vista oral sea considerada, deberá exponer lo siguiente:

(1) la novedad de la controversia; y

(2) cómo la celebración de la vista oral ayudaría al Tribunal en su proceso decisional.

(b) Notificación de Vista Oral

Las vistas para argumentación oral concedidas u ordenadas por el Tribunal serán señaladas por el Secretario o la Secretaria del Tribunal para el tercer martes del mes siguiente y los días sucesivos que fuesen necesarios, a menos que el Tribunal modifique el señalamiento.

(c) Tiempo permitido para Argumentar

(i) Para los informes orales de los abogados y las abogadas se concederá el tiempo que a continuación se expresa:

(1) En todos los casos, excepto en las mociones, el término máximo será de una (1) hora. Cada parte tendrá veinticinco (25) minutos para presentar el argumento principal y cinco (5) minutos para replicar.

(2) En la vista de las mociones, cada parte tendrá diez (10) minutos para el argumento principal y cinco (5) minutos para replicar.

(3) El Tribunal podrá, mediante una orden al efecto, aumentar o disminuir dichos periodos en cualquier caso.

(ii) El peticionario o apelante será el primero en argumentar. Cada parte tendrá dos (2) minutos de su turno para hacer una exposición de sus argumentos principales en

el caso. Al transcurrir este término, cada Juez tendrá la oportunidad de hacer preguntas al abogado individualmente, sin interrupción. Las preguntas procederán en orden de mayor antigüedad, comenzando con el Juez Presidente o la Jueza Presidenta. Concluida esta ronda inicial de preguntas, los Jueces podrán hacer preguntas de seguimiento en cualquier orden.

(iii) El Secretario o la Secretaria anunciarán los asuntos una vez el Tribunal entre en sesión y se despacharán según el orden establecido.

(iv) Las causas podrán oírse conjuntamente a moción de cualquiera de las partes o por iniciativa del Tribunal, cuando las mismas partes comparezcan en cada causa o cuando se trate de las mismas cuestiones fundamentales, pero la concesión o denegación de una moción para la acumulación de causas quedará siempre reservada a la discreción del Tribunal.

(v) Al dirigirse al Tribunal, y mientras hagan sus informes, los abogados y las abogadas deberán permanecer de pie, a menos que por causa de enfermedad o impedimento físico, el Tribunal les conceda permiso para permanecer sentados.

(vi) Las partes deben suponer que todos los Jueces y las Juezas han leído los escritos previo a la vista oral. Al dirigirse al Tribunal, el abogado o la abogada deberá argumentar cada punto en sus méritos tratando de abstenerse de leer lo que argumenta o haciendo uso de ese recurso lo menos posible.[12] Al hacer su informe oral, los abogados y las abogadas deberán: (1) señalar las cuestiones en controversia y (2) exponer su posición al respecto. Los abogados y las abogadas deberán limitarse a los asuntos en controversia. No deberán hacer referencia a hechos que no consten en los autos, a menos que hayan solicitado la venia del Tribunal para ello con la anticipación debida, mediante una moción escrita fundamentada y notificada a las demás partes.

(vii) No se permitirá la argumentación oral de cualquier parte que no haya presentado su posición por escrito.

---

[12] Esta disposición se extrae, sustancialmente, de la Regla 28 del Reglamento del Tribunal Supremo federal. Véanse: Regla 28 de las Reglas del Tribunal Supremo de Estados Unidos en, http://www.supremecourt.gov/ctrules/2010RulesoftheCourt.pdf (última visita, 10 de mayo de 2011). Véase, además, Regla 34 de las Reglas Federales del Procedimiento Apelativo de la Corte de Apelaciones para el Primer Circuito de Estados Unidos, en http://www.ca1.uscourts.gov/files/rules/rulebook.pdf (última visita, 10 de mayo de 2011).

.   .   .   .   .   .   .   .

**Regla 43. Comparecencia como *amicus curiae*[13]**

En cualquier caso o asunto que se ventile ante el Tribunal se podrá presentar un escrito de *amicus curiae*.[14] A esos efectos, se establece lo siguiente:

(a) En todo recurso de *certiorari*, apelación, jurisdicción original o certificación se podrá presentar un escrito de *amicus curiae* si consta el consentimiento de todas las partes. El Tribunal recomienda que las partes consientan a la presentación de los escritos de *amicus curiae*.

(b) Cuando no conste el consentimiento escrito de todas las partes, quien interese presentar un escrito de *amicus curiae* podrá solicitarlo mediante moción escrita acompañada del escrito correspondiente. El Tribunal tendrá discreción para autorizar la presentación del escrito de *amicus curiae*.

(c) En la moción para solicitar autorización para presentar un escrito como *amicus curiae* se deberá acreditar: cuál es el interés para comparecer como tal; la razón por la que el escrito de *amicus curiae* es deseable, y por qué las cuestiones enunciadas son relevantes para la disposición del caso.

(d) El Gobierno de Puerto Rico podrá presentar un escrito de amicus curiae sin que sea necesario el consentimiento de las partes o la autorización del Tribunal.

(e) El escrito de *amicus curiae* no podrá tener más de veinte (20) páginas, excluyendo el índice y el apéndice, si aplica.  Se presentarán un (1) original y diez (10) copias.

(f) El compareciente como *amicus curiae* no podrá presentar una réplica, salvo permiso del Tribunal.

---

[13] Las enmiendas a esta Regla buscan flexibilizar y promover la comparecencia de amigos de la corte. Estas provienen, en gran medida, de la Regla 37 del Reglamento del Tribunal Supremo federal. Véase: Regla 37 del Reglamento del Tribunal Supremo federal.

[14] Un escrito de *amicus curiae* que ponga en conocimiento del tribunal un asunto relevante que no haya sido ya señalado por las partes puede ser de gran ayuda para el proceso deliberativo del Tribunal. Por el contrario, un escrito de *amicus curiae* que no sirva para este fin supone una carga para el Tribunal, por lo que no se favorece su presentación.

La notificación del escrito de *amicus curiae* se hará conforme a la Regla 39 de este Reglamento.

.    .    .    .    .    .    .    .

**Regla 52. Informes anuales**

Al concluir cada año fiscal, el Secretario o la Secretaria del Tribunal Supremo publicará en la página cibernética oficial del Poder Judicial un informe en el que se hará constar el total del número de recursos presentados y resueltos por el Tribunal. A su vez, el informe incluirá el número de recursos pendientes ante el Tribunal al inicio y al final del año fiscal correspondiente. Se deberá detallar el número de recursos presentados, resueltos y pendientes según su naturaleza; esto incluye los recursos de apelación, *certiorari*, jurisdicción original (hábeas corpus, *mandamus*, auto inhibitorio, *quo warranto*), recurso gubernativo, *injunction*, conducta profesional y certificación. También se incluirá el número de vistas orales solicitadas y concedidas, y el número de comparecencias de *amicus curiae* presentadas. El informe contendrá también el número de los recursos asignados y resueltos por cada Juez y Jueza, incluyendo las opiniones suscritas, opiniones *per curiam* y sentencias. Además, se hará constar el número de opiniones y votos disidentes, concurrentes y de conformidad, así como los votos particulares de cada Juez y Jueza.

Este informe se pondrá a la disposición de los medios de comunicación y se publicará en el portal cibernético del Poder Judicial para el conocimiento general.

.    .    .    .    .    .    .    .

Estas enmiendas entrarán en vigor el 1 de octubre de 2023 y aplicarán a todos los recursos que se presenten a partir de su fecha de efectividad. La Regla 5 enmendada aplicará a las ponencias circuladas a partir de 1 de octubre de 2023.

Publíquese.

Notifíquese por correo electrónico al Director Administrativo de los Tribunales y al Director de la Oficina de Prensa.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García concurre. El Juez Asociado señor Martínez Torres emite un Voto particular de conformidad al cual se unieron el Juez

Asociado señor Kolthoff Caraballo y el Juez Asociado señor Feliberti Cintrón. El Juez Asociado señor Estrella Martínez emite un Voto Particular. La Jueza Asociada señora Pabón Charneco no intervino.


Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


*In re:*


Aprobación de enmiendas al
Reglamento del Tribunal
Supremo
                              ER-2023-0001




Voto particular de conformidad emitido por el Juez Asociado señor MARTÍNEZ TORRES al cual se unieron el Juez Asociado señor KOLTHOFF CARABALLO y el Juez Asociado señor FELIBERTI CINTRÓN


En San Juan, Puerto Rico, a 14 de junio de 2023.

Las enmiendas a nuestro Reglamento que aprobamos hoy tienen el propósito de mejorar el trámite interno de este Tribunal. En específico, evitan que se paralicen los casos por meses acogiéndose al término reglamentario para estudiar ponencias. También se proscribe circular escritos (o enmiendas a estos) al momento de certificar. Estas "emboscadas" cortan la deliberación y el intercambio de ideas.

Si yo fuera a defender esa práctica nociva al consenso y la deliberación pondría reparos a las enmiendas. También propondría hoy, a última hora, cambios adicionales. En cambio, porque creo que hay que cerrar una laguna reglamentaria que propicia la

sorpresa indebida y el retraso en lugar del diálogo y la deliberación, voto a favor de las enmiendas. Conviene dejar el récord claro, para que la comunidad no se confunda.

Las enmiendas que hoy se aprueban no impiden el acceso a la justicia. Por el contrario, y a manera de ejemplo, puedo mencionar que se liberaliza la práctica para comparecer como amigo de la corte o para solicitar una vista oral. El resto del trámite ante este Foro permanece inalterado. No lo altera ni lo afecta. En el futuro, la tecnología traerá más cambios. No dudo que cuando se apruebe un sistema electrónico de manejo de casos en este Tribunal, habrá modificaciones en el trámite de los recursos, para beneficio del Pueblo.

Lo que no se hace con estas enmiendas, y lo rechazo aquí expresamente, es incorporar un "derecho especial de confinados". Tampoco se pretende que la naturaleza unificada de nuestro sistema judicial dé al traste con el concepto constitucional de competencia entre los componentes del sistema. Mucho menos daría mi aval a un reglamento que acabe con la práctica adversativa del derecho apelativo y nos convierta en abogados de partes. La igualdad ante la ley y la imparcialidad del foro judicial son principios cardinales de mi concepción de la justicia.

El término para votar sobre las ponencias permanece inalterado: treinta días. Lo que se acortó fue el plazo excepcional que provee la Regla 5 para acogerse a más tiempo para estudiar una ponencia. Aun así, y por consenso, se

adoptó un plazo razonable para ello (quince días adicionales por cada juez que se acoja al término adicional reglamentario), que garantiza tiempo suficiente (que puede ascender a varios meses) para estudiar una ponencia y para concurrir o disentir cuando ello sea necesario. Esta regla aplica a todos los jueces por igual y no coloca a alguno en desventaja. Con ese balance de tiempo se busca que este mecanismo -aunque necesario- no se convierta en una herramienta para retrasar estratégicamente la certificación de una decisión.

Probablemente estas enmiendas fueron objeto de la discusión interna más prolongada en la historia de este Tribunal. Por espacio de seis meses los miembros de esta Curia participamos exhaustivamente en el proceso de su desarrollo y ponderación. Debe quedar claro que lo hoy adoptado son enmiendas al trámite interno de este Foro, asunto de mucho valor, pero cuyos detalles no trascienden fuera de este recinto. Por esa razón no era práctico requerir comentarios sobre asuntos que muy bien podrían estar en una guía interna y no en el Reglamento. Se siguió hasta la saciedad el proceso deliberativo y colaborativo que se ha utilizado históricamente. Lo aprobado responde a un consenso y no al deseo de tan solo algunos de los integrantes de este Tribunal. De hecho, lo aprobado finalmente dista de lo que se propuso inicialmente, precisamente debido al insumo de todos los integrantes del Foro.

Por lo anterior, voto a favor de las enmiendas. Aunque se queden cortas en muchas áreas, mejoran nuestro funcionamiento.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| *In re:* | |
| Aprobación de enmiendas al Reglamento del Tribunal Supremo | ER-2023-0001 |

Voto particular emitido por el Juez Asociado Señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 14 de junio de 2023.

Luego del transcurso de más de una década sin que el Reglamento del Tribunal Supremo de Puerto Rico fuera objeto de una revisión integral, hoy este Tribunal aprueba un conjunto de enmiendas que, a mi juicio, no son suficientes para atender las verdaderas necesidades de la comunidad jurídica. Esto, principalmente, por no ser producto del mejor ejercicio deliberativo y colaborativo, toda vez que: (1) su elaboración no se benefició de aportaciones públicas o del insumo de diversos sectores de la comunidad jurídica; (2) las enmiendas no están enteramente apegadas al concepto de accesibilidad en el que se fundamentan, y (3) estas tienen un impacto sobre el proceso de discusión de ponencias entre los miembros de este Foro. Me explico.

De entrada, es necesario denotar que, entre todas las vías de colaboración disponibles que fueron pasadas por alto

al momento de ejecutar esta encomienda, la experiencia judicial me obliga a destacar cuán idónea hubiera sido la ocasión para implantar un proceso público de difusión, contribución y accesibilidad con el fin de asegurar la participación de la comunidad jurídica y demás sectores. De hecho, la elaboración de las enmiendas solo incluyó una discusión colegiada entre los miembros de este Foro después de que fueron propuestas, aunque reconozco que de esta surgió consenso en algunos extremos. A la luz de esto, me reitero en la necesidad de promover un mayor grado de discusión pública en el proceso de reglamentación de la misma forma en la que he apoyado fomentar la transparencia en otras dimensiones de nuestro ejercicio judicial.[1]

---

[1]A modo de ejemplo, véase mi postura consecuente en lo relacionado con la transmisión de los procesos judiciales: Voto particular disidente del Juez Asociado señor Estrella Martínez en *Telenoticias, Telemundo PR, Ex parte I*, 195 DPR 34, 37 (2016); Voto particular disidente del Juez Asociado señor Estrella Martínez en *Televicentro of PR, LLC, Ex parte*, 195 DPR 18, 29 (2016); Voto particular del Juez Asociado señor Estrella Martínez en *In re Enmdas. Regl. Uso Cámaras Proc. Jud.*, 193 DPR 475, 502 (2015); Voto particular disidente del Juez Asociado señor Estrella Martínez en *ASPRO, Ex parte*, 192 DPR 961, 969 (2015); Voto particular de conformidad del Juez Asociado señor Estrella Martínez en *ASPRO et al., Ex parte*, 192 DPR 395, 396 (2015); Voto particular de conformidad del Juez Asociado señor Estrella Martínez en *ASPRO et al., Ex parte*, 191 DPR 490 (2014); Voto particular de conformidad del Juez Asociado señor Estrella Martínez en *Solicitud ASPRO et al., Ex parte II*, 190 DPR 184, 189 (2014); Voto particular disidente del Juez Asociado señor Estrella Martínez en *ASPRO et al., Ex parte I*, 190 DPR 82, 85 (2014);  Voto particular de conformidad del Juez Asociado señor Estrella Martínez en *ASPRO et al., Ex parte I*, 189 DPR 769, 784 (2013); Voto de conformidad del Juez Asociado señor Estrella Martínez en *In re C. 15; Regl. Uso Cámaras Proc. Jud.*, 188 DPR 424, 445 (2013).

En ese sentido, si bien estas enmiendas se describen como un producto del "beneficio de la experiencia"[2], urge preguntarse si un proceso de revisión de reglamentación tan amplio como este no debió contar también con la experiencia de los diversos componentes del sistema de administración de la justicia en lugar de limitarse a la experiencia de los miembros de este Tribunal. Aunque reconozco la facultad de una mayoría para adoptar el bloque de enmiendas que nos ocupa, considero que debimos emular las jurisdicciones de avanzada y reconocer la norma de que los procesos de reglamentación deben ser públicos.[3] Con ello en mente, es mi impresión que el desarrollo de estas enmiendas requería su publicación con el fin de solicitar comentarios y aportaciones de la comunidad jurídica para atender

---

[2]Resolución In re: Aprobación de enmiendas al Reglamento del Tribunal Supremo, pág. 2.

[3]Para una discusión en torno a la participación ciudadana en procesos de reglamentación, véase Sec. 7.1-Participación ciudadana en general. L.F. Estrella Martínez, Acceso a la justicia: derecho humano fundamental, San Juan, Eds. Situm, 2017, págs. 185-190. Según lo describe la Prof. Erika Fontánez, este tipo de participación ciudadana general en el proceso de reglamentación administrativa aporta, entre otras cosas: (1) una perspectiva distinta, quizás no contemplada previamente por la agencia; (2) un tipo de válvula de seguridad para que las personas se expresen libremente antes de que se implante la política pública propuesta; (3) facilita la implantación de los programas adoptados vía la reglamentación, y (4) legitima la acción que finalmente tome el Estado. Erika Fontánez Torres, El derecho a participar: Normas estudios de caso y notas para una concreción, 68 Rev. Col. Abog. PR 631, 632 (2007).

directamente los obstáculos, controversias procesales y retos que confrontan las partes que acuden a este Tribunal.

En esta coyuntura, es imperativo remarcar que las Reglas del Tribunal Supremo tienen la misma relevancia que otras reglamentaciones que ha aprobado este Tribunal, como, por ejemplo, las de Procedimiento Criminal. Ambas piezas reglamentarias tienen el potencial de brindar a los distintos componentes de la sociedad un verdadero acceso a la justicia o, por el contrario, imponer barreras procesales adicionales que no permitan el reconocimiento y desarrollo pleno de los derechos sustantivos. Debido a ello, la experiencia debe conducirnos a ampliar los procesos participativos y deliberativos, no limitarlos.

Mas, el proceso de desarrollo y aprobación de las reglas hoy aprobadas contrasta con aquel que fue adoptado para la preparación de las nuevas Reglas de Procedimiento Criminal.[4] Al optar por conceder a este proyecto un proceso

---

[4] El 2 de febrero de 2017, mediante la Resolución EC-2017-01, este Tribunal reconstituyó el Comité Asesor Permanente de Reglas de Procedimiento Criminal (Comité Asesor) con el fin de que este actualizara el Informe de Reglas de Procedimiento Penal presentado en diciembre de 2008. In re Comité Rs. Proc. Criminal, 197 DPR 287 (2017). El Comité Asesor entregó un Informe de Reglas de Procedimiento Criminal actualizado (Informe de Reglas) el 30 de noviembre de 2018, por lo cual, consecuentemente este Tribunal emitió la Resolución ER-2019-02 con el fin de convocar una Sesión Especial para que se aumentara el acceso de la comunidad jurídica al proyecto y se examinara su contenido, compartiera impresiones y dudas, y se garantizara una participación multisectorial de la comunidad jurídica. In re Sesión Especial del Tribunal Supremo de Puerto Rico sobre el Proyecto de Reglas de Procedimiento Criminal de 2018, 201 DPR 1053 (2019). Esta se celebró el 7 de junio de

deliberativo diferente, desaprovechamos la oportunidad para adelantar y fortalecer el Derecho de acceso a la justicia mediante una reforma reglamentaria verdaderamente transparente, participativa e inclusiva.

Por otra parte, la Resolución que hoy se certifica también presume de cómo estas enmiendas están a tono con "la accesibilidad y transparencia".[5] Cabe cuestionarse, entonces, quién es el beneficiario de la accesibilidad aludida. Para comenzar, una lectura de las enmiendas revela que estas no tomaron en cuenta las transformaciones que urgen en nuestro ordenamiento para brindar a los sectores vulnerables un mejor y más eficiente acceso a la justicia, tales como aquellos que se enfrentan a la burocracia del Gobierno contra el que litigan.

A modo de ejemplo, podemos mencionar la forma en la que se perpetuó innecesariamente la imposición del peso de la notificación sobre los confinados cuando nuestro ordenamiento debería reconocer más firmemente la dificultad que tiene este sector con la ejecución de tal tarea y, a la luz de esto, hacer concesiones a su favor.[6] Asimismo, las

---

2019. Entiéndase, este proyecto reglamentario fue objeto de publicidad y discusión amplia a través de los diversos sectores que componen la comunidad jurídica, quienes fueron concedidos la oportunidad de aportar a su elaboración.

[5]Resolución In re: Aprobación de enmiendas al Reglamento del Tribunal Supremo, pág. 2.

[6]Véase, Sección 3.13 (l) de la antigua Ley de Procedimiento Administrativo del Estado Libre Asociado de Puerto Rico, Ley Núm. 70-1988, 3 LPRA sec. 2163 (Derogada),

enmiendas también obviaron darle un efecto práctico al concepto de "tribunal unificado" con el fin específico de que el Poder Judicial pueda tomar conocimiento oficial de los expedientes y registros que obran en cualquiera de sus Secretarías, especialmente ante la ampliación actual del Sistema Unificado de Manejo y Administración de Casos (SUMAC). De esta forma, se podría simplificar el proceso de revisión o apelación para el abogado litigante y los ciudadanos que acuden por derecho propio, quienes ven sus casos desestimados por tecnicismos relacionados con la falta de presentación de algún documento o grabación que ya está en la posesión de alguno de los tribunales que componen nuestro sistema judicial. Son este tipo de consideraciones las que realmente ameritaban propulsar enmiendas a nuestro Reglamento en verdadero servicio a la accesibilidad, mas, ninguna modificación a estos fines forma parte de la reglamentación hoy aprobada.

Finalmente, lejos de alcanzar postulado alguno de transparencia, la mayoría de las enmiendas aprobadas tienen

---

la cual disponía de un mecanismo de notificación por parte de la Secretaría del Tribunal: "[l]a Secretaría del Tribunal de Apelaciones completará el trámite correspondiente de su notificación a la agencia administrativa demandada y a las demás partes". Asimismo, la Regla 30.1 (A) del Reglamento del Tribunal de Apelaciones vigente dispone que, tras el recibo de un escrito de apelación de un confinado o indigente, "el Secretario o Secretaria del tribunal sentenciador o del Tribunal de Apelaciones lo notificará al Fiscal de Distrito o a la Fiscal de Distrito y al Procurador General o Procuradora General". 4 LPRA Ap. XXII-B.

un efecto disuasivo sobre la expresión disidente en este Tribunal. Esto, principalmente, mediante el recorte de los términos de análisis de ponencias en detrimento de un análisis sosegado, reflexivo y ponderado.[7] En cuanto a esto, debo conceder que, tras discusiones al respecto, se logró alcanzar un consenso que limitó el impacto de estas enmiendas en el rigor que debe tener el proceso evaluativo y en el descargue de nuestra función de pautar jurisprudencia.

Ahora bien, aunque menos lesivo, sí se materializó un recorte a los términos que incide sobre nuestra capacidad para garantizar una lectura abarcadora y sosegada de cada ponencia ante nuestra consideración. De ahora en adelante se reducirá a la mitad el término que cada juez y jueza tiene para analizar las ponencias. Más allá que solo una preocupación por la reducción del tiempo de estudio y análisis que pone en efecto este grupo de enmiendas, la inquietud más latente es cómo ello refleja la desnaturalización del marco de trabajo como cuerpo colegiado y la búsqueda del consenso entre los miembros de este Foro. Francamente, no creo que esto abone a mejorar la calidad de las ponencias. De hecho, la reducción de los términos de estudio de ponencias con el fin de apresurar su certificación no encuentra justificación en el desempeño actual de este Tribunal toda vez que los índices de productividad demuestran

---

[7]Véase, Regla 5(b) de las Enmiendas al Reglamento del Tribunal Supremo.

que no existe un atraso que amerite la adopción de tales

medidas.[8]

A mi juicio, el nuevo proceso promulgado desalentará

el examen sosegado de las ponencias mayoritarias propuestas.

Lamentablemente, la prisa injustificada pretende implantar

un estilo que se asemeja más a los paneles de foros

apelativos intermedios y no a un tribunal de última instancia

cuya jurisprudencia tiene efectos vinculantes para toda la

sociedad.[9]  Reitero, no puede ignorarse el efecto agravante

que este esquema tendrá sobre la disidencia.

---

[8]Véase, Informe estadístico Ano Fiscal 2021-2022, https://poderjudicial.pr/documentos/informes/estadisticas/Informe-Estadistico-2021-2022.pdf.

[9]En fin, la necesidad de un tribunal de última instancia colegiado no puede ser sobrestimada. Como se sabe,

> Collegiality is a process that helps to create the conditions for principled agreement, by allowing all points of view to be aired and considered. Specifically, it is my contention that collegiality plays an important part in mitigating the role of partisan politics and personal ideology by allowing judges of differing perspectives and philosophies to communicate with, listen to, and ultimately influence one another in constructive and law-abiding ways. Harry T. Edwards, The Effects of Collegiality on Judicial Decision Making, 151 U. Pa. L. Rev. 1639, 1645 (2003).

Ciertamente, "para impartir justicia y elaborar doctrinas jurídicas adecuadas, un tribunal colegiado tiene que disponer del sosiego y del reposo intelectual necesarios, sin los cuales toda discusión entre mentes debidamente instruidas es imposible". Pueblo v. Rosario, 80 DPR 318, 328 (1958). Ello, por supuesto, no implica unanimidad eterna entre los componentes de este Foro, pues

> the core conception of judicial collegiality does not suggest that it is absent when disagreement triumphs in a particular case. To the contrary, advocates of the importance of collegiality

En ausencia de consideraciones que realmente materialicen y solidifiquen la accesibilidad a nuestros tribunales, carentes, además, de la experiencia y contribución colectiva de una comunidad jurídica que las sustenten, y por su efecto funesto en el ejercicio deliberativo y colaborativo entre los miembros de este Foro, no me queda otra alternativa que consignar la ruta que, a mi juicio, realmente hubiera propulsado una reforma reglamentaria integral que atendiera los problemas genuinos de la abogacía y del Pueblo.

## II

Por lo expresado, hubiese promovido una verdadera reforma reglamentaria pública y participativa. De igual forma, hubiese integrado disposiciones y mecanismos dirigidos a fomentar un mayor grado de economía procesal para beneficio de las partes litigantes sin sacrificar la ponderación y el análisis de los escritos que tienen el potencial de moldear el Derecho que rige en nuestro ordenamiento. Aunque reconozco que los miembros de este Tribunal hicieron un esfuerzo de colegiación que me permite

---

emphasize that collegiality requires judges to be open to, and respect, one another's arguments, not that it requires judges actually to be convinced by their fellow judges' arguments. Jonathan Remy Nash, Measuring Judicial Collegiality Through Dissent, 70 Buff. L. Rev. 1561, 1576 (2022).

Al fin y al cabo, "[i]t is well understood that a court draws its power from its perceived legitimacy, and collegiality enhances legitimacy". Íd., pág. 1579.

concurrir con algunas de las enmiendas, consigno que el proceso de reglamentación debió ser más participativo e inclusivo y que pudimos haber aprovechado la oportunidad para realizar enmiendas dirigidas a simplificar aspectos medulares de la práctica apelativa y adoptar medidas para fomentar un mayor acceso a la justicia.

                                    Luis F. Estrella Martínez
                                         Juez Asociado